## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STECKMAN RIDGE GP, LLC, )
SPECTRA ENERGY TRANSMISSION )
RESOURCES, LLC AND NJR )
STECKMAN RIDGE STORAGE )
COMPANY, partners trading as )
STECKMAN RIDGE, LP, a Delaware )
joint venture limited partnership, )
               Plaintiffs, )   **CIVIL ACTION NO. 08-168**
       v. )   JUDGE KIM R. GIBSON
                                   )
AN EXCLUSIVE NATURAL GAS )
STORAGE EASEMENT BENEATH 11.078 )
ACRES, MORE OR LESS, IN MONROE )
TOWNSHIP, BEDFORD COUNTY, )
COMMONWEALTH OF PENNSYLVANIA, )
and 0.34 ACRES OF LAND, MORE OR LESS, )
IN MONROE TOWNSHIP, BEDFORD )
COUNTY, COMMONWEALTH OF )
PENNSYLVANIA, and CHRIS CIAMPA, )
RICHARD C. ECKMAN, JR., THOMAS E. )
TRIPP and LINDA HYATT-TRIPP, )
                                   )
               Defendants. )

STECKMAN RIDGE GP, LLC, )
SPECTRA ENERGY TRANSMISSION )
RESOURCES, LLC AND NJR )
STECKMAN RIDGE STORAGE )
COMPANY, partners trading as )
STECKMAN RIDGE, LP, a Delaware )
joint venture limited partnership, )
               Plaintiffs, )   **CIVIL ACTION NO. 08-169**
       v. )   JUDGE KIM R. GIBSON
                                   )
3.5 ACRES OF LAND, MORE OR LESS, )
IN MONROE TOWNSHIP, BEDFORD )
COUNTY, COMMONWEALTH OF )
PENNSYLVANIA, and GLYNN H. NEEDHAM, )
                                   )
               Defendants. )

STECKMAN RIDGE GP, LLC,                    )
SPECTRA ENERGY TRANSMISSION                )
RESOURCES, LLC AND NJR                     )
STECKMAN RIDGE STORAGE                     )
COMPANY, partners trading as               )
STECKMAN RIDGE, LP, a Delaware             )
joint venture limited partnership,         )

           Plaintiffs,    )    **CIVIL ACTION NO. 08-177**

      v.                                    )    JUDGE KIM R. GIBSON

                            )

AN EXCLUSIVE NATURAL GAS STORAGE           )
EASEMENT BENEATH 100.00 ACRES, MORE        )
OR LESS, IN MONROE TOWNSHIP,               )
BEDFORD COUNTY, COMMONWEALTH OF            )
PENNSYLVANIA, and 0.82 ACRES OF LAND,      )
MORE OR LESS, IN MONROE TOWNSHIP,          )
BEDFORD COUNTY, COMMONWEALTH OF            )
PENNSYLVANIA, and KENNETH R. KLAHRE        )
and SANDRA K. KLAHRE,                      )

           Defendants.     )

STECKMAN RIDGE GP, LLC,                    )
SPECTRA ENERGY TRANSMISSION                )
RESOURCES, LLC AND NJR                     )
STECKMAN RIDGE STORAGE                     )
COMPANY, partners trading as               )
STECKMAN RIDGE, LP, a Delaware             )
joint venture limited partnership,         )

           Plaintiffs,    )    **CIVIL ACTION NO. 08-179**

      v.                                    )    JUDGE KIM R. GIBSON

                            )

EXCLUSIVE NATURAL GAS STORAGE              )
EASEMENTS BENEATH TWO PARCELS OF           )
183.73 AND 35.27 ACRES, MORE OR LESS,      )
IN MONROE TOWNSHIP, BEDFORD                )
COUNTY, COMMONWEALTH OF                    )
PENNSYVLVANIA, and 8.58 ACRES OF LAND,     )
MORE OR LESS, IN MONROE TOWNSHIP,          )
BEDFORD COUNTY, COMMONWEALTH OF            )
PENNSYLVANIA, and PAUL C. STUP and         )
HELEN T. STUP,                             )

           Defendants.     )

STECKMAN RIDGE GP, LLC,                    )
SPECTRA ENERGY TRANSMISSION                )
RESOURCES, LLC AND NJR                     )
STECKMAN RIDGE STORAGE                     )
COMPANY, partners trading as               )
STECKMAN RIDGE, LP, a Delaware             )
joint venture limited partnership,         )
                          Plaintiffs,      )    **CIVIL ACTION NO. 08-180**
            v.                             )    JUDGE KIM R. GIBSON
                                           )
AN EXCLUSIVE NATURAL GAS STORAGE           )
EASEMENT BENEATH 10.078 ACRES,             )
MORE OR LESS, IN MONROE TOWNSHIP,          )
BEDFORD COUNTY, COMMONWEALTH               )
OF PENNSYLVANIA, and 2.0 ACRES OF LAND,)
MORE OR LESS, IN MONROE TOWNSHIP,          )
BEDFORD COUNTY, COMMONWEALTH OF            )
PENNSYLVANIA, and JAMES L. GIPSON and      )
CAROL A. GIPSON,                           )
                          Defendants.      )
_____)

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### SYNOPSIS

This matter comes before the Court on Plaintiffs' Omnibus Motion for Preliminary

Injunction (Document No. 4 in all cases),[1] pursuant to Fed. R. Civ. P. 65, to allow Plaintiffs

immediate possession of and entry onto the properties owned by the Defendants. Plaintiffs seek

this injunctive relief under the eminent domain authority of the Natural Gas Act (NGA), 15

U.S.C. § 717, pursuant to a certificate of public convenience and necessity issued by the Federal

Energy Regulatory Commission (FERC), prior to a final decision concerning the amount and

_____

[1]There is a separate motion filed in each of the above-captioned cases; however, since
the issues presented to the Court and the Court's analysis are identical in each case, the
motions are addressed collectively in this Opinion.

payment of compensation to the Defendants as condemnees.

Also, before the Court are the Emergency Motions for Preliminary Injunction filed by the Defendants in Civil Action No. 08-177 (Document No. 26) and Civil Action No. 08-179 (Document No. 26).

For the reasons set forth below, Plaintiffs' motion for preliminary injunction is granted in each case and both of the emergency motions for preliminary injunction filed by the Defendants in Civil Action No. 08-177 and Civil Action No. 08-179 are denied as moot.

## JURISDICTION AND VENUE

The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. § 717f(h). Venue is properly laid in this district pursuant to 28 U.S.C. § 1391 (b).

## BRIEF HISTORY

Plaintiffs Steckman Ridge GP, LLC as general partner and Spectra Energy Transmission Resources, LLC and NJR Steckman Ridge Storage Company, as limited partners, together trading as Steckman Ridge, LP (hereinafter Steckman or Plaintiffs) seek to develop a natural gas storage facility in depleted gas wells in Bedford County, Pennsylvania. Document No. 1, ¶¶ 1, 32-39. FERC granted Plaintiffs a certificate of public convenience and necessity on June 5, 2008. *Id.*, Plaintiffs' Exhibit D. Plaintiffs, citing "the authority in the FERC certificate and . . . [their] rights of eminent domain under the Natural Gas Act . . . intend[] to acquire, by condemnation, easements in lands owned by . . . defendants in Monroe Township, Bedford County, Pennsylvania, along with storage rights in the geologic formation underlying all the defendants' properties and the residual gas reserve remaining in the formation." Document No. 1 ¶ 27.

4

Defendants requested a rehearing from FERC and on July 16, 2008 the agency, facing a thirty-day window in which to make its decision, granted Defendants' request "for the limited purpose of further consideration" of their request for rehearing.

Plaintiffs seek immediate possession of the Defendants' real estate by means of a motion for preliminary injunction in order to conduct pipeline construction and related activities prior to a final decision of the amount and payment of compensation to the Defendants. Defendants assert that immediate possession by means of the equitable remedy of a preliminary injunction should not be granted.

## DISCUSSION

The main issue before the Court is whether immediate possession of real estate which is the subject of a FERC certificate of public convenience and necessity may be granted to the holder of that certificate through the equitable remedy of a preliminary injunction.

The Court's research has revealed no Third Circuit decision providing direct guidance on this issue. The parties have not provided any Third Circuit precedent either. Therefore, we have turned to other circuits for guidance. The Fourth Circuit has determined that immediate possession through the equitable remedy of a preliminary injunction is available under the NGA to a natural gas company which has been granted a FERC certificate of public convenience and necessity. *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004).

The Seventh Circuit determined that immediate possession would not be granted based upon the NGA and a FERC certificate of public convenience and necessity. *N. Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469 (7th Cir. 1998).

5

A review of these two cases initially leads to a conclusion that the two circuits are in conflict, but upon further analysis, the positions of the two courts can be reconciled. The approach of the Fourth Circuit in *Sage* is used by almost all federal courts which have addressed this issue. Even Seventh Circuit district courts appear to follow *Sage*.[2] This Court also finds *Sage* to be persuasive and we will follow its approach with regard to this issue of immediate possession. However, prior to a detailed discussion of *Sage*, we will address certain preliminary issues which need to be resolved prior to examination of the main issue before the Court.

---

[2]In *Northern Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469 (7th Cir. 1998) the Court held that the plaintiff, which had been issued a certificate of public convenience and necessity by FERC, which carried with it the power of eminent domain pursuant to the NGA §§717-717z, was not entitled to a preliminary injunction for immediate possession. The court based this denial on the conclusion that plaintiff did not assert that it had a preexisting entitlement to the land based upon the FERC certificate. Subsequent district court decisions in the Seventh Circuit demonstrate that the circuit court's decision in *Northern Border Pipeline Co. v. 86.72 Acres of Land* has been applied in a manner which has not prevented the issuance of a preliminary injunction granting immediate possession of land which was subject to the eminent domain authority of a FERC certificate. *See N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F. Supp. 2d 299 (N.D. Ill. 2000) and *Guardian Pipeline v. 529.42 Acres of Land*, 210 F. Supp. 2d 971 (N.D. Ill. 2002). In the first case, the Seventh Circuit's decision in *Northern Border Pipeline Co. v. 86.72 Acres of Land* was distinguished by finding that entry of a judgment of condemnation by the district court meets the requirement that the plaintiffs have a preexisting entitlement to the land. *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000). In the second case the district court did not mention the Seventh Circuit's decision in *Northern Border Pipeline Company v. 86.72 Acres of Land* but rather based its decision on the federal supremacy of the FERC procedure and certificate. *Guardian Pipeline v. 529.42 Acres of Land*, 210 F. Supp. 2d 971 (N.D. Ill. 2002).

6

## Judicial Abstention

In addressing the question of the supremacy of federal law in eminent domain proceedings

involving natural gas transmission and storage facilities, the Third Circuit has determined that

"Congress intended to preempt state regulation of rates *and facilities* of natural gas companies

and it [is] clear that the Natural Gas Act was *intended by Congress to occupy the field.*" *Pa.*

*Med. Soc. v. Marconis*, 942 F.2d 842, 847 (3d Cir. 1991) (citing *Schneidewind v. ANR Pipeline*

*Co.*, 485 U.S. 293, 308, 108 S. Ct. 1145, 1154, 99 L. Ed. 2d 316 (1988)) (emphasis added). The

Court is aware of no authority for the contrary view. The Supreme Court explained:

> The NGA long has been recognized as a "comprehensive scheme of federal regulation
> of 'all wholesales of natural gas in interstate commerce.'" *Northern Natural Gas Co.*
> *v. State Corporation Comm'n of Kansas*, 372 U.S. 84, 91, 83 S.Ct. 646, 650-51, 9
> L.Ed.2d 601 (1963), quoting *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 682,
> 74 S.Ct. 794, 799, 98 L.Ed 1035 (1954). The NGA confers upon FERC exclusive
> jurisdiction over the transportation and sale of natural gas in interstate commerce for
> resale. *Northern Natural Gas Co.*, 372 U.S., at 89, 83 S.Ct., at 649. FERC exercises
> authority over the rates and facilities of natural gas companies used in this
> transportation and sale through a variety of powers. Sections 4, 5, and 7 of the NGA,
> as amended, 15 U.S.C. §§ 717c, 717d, and 717f, give FERC a number of tools for
> examining and controlling the issuance of securities of natural gas companies in the
> exercise of its comprehensive authority.

*Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300-301 (1988).

The Supreme Court further explained:

> Congress occupied the field of matters relating to wholesale sales and transportation
> of natural gas in interstate commerce. *See, e.g., Illinois Gas Co. v. Central Illinois*
> *Public Service Co.*, 314 U.S. 498, 506-507, 62 S.Ct. 384, 386-387 (1942).

*Id.* at 305.

**Prematurity**

Defendants argue that since FERC has granted their request for a rehearing the Court should not address Plaintiffs' claims until after the rehearing is concluded. Document No. 6, pp. 2-3, 9. This position is not supported by either statute or case law. The FERC certificate was issued pursuant to FERC order. Document No. 5, p. 34. Filing an application for rehearing with FERC does not, "unless specifically ordered by the Commission, operate as a stay of the Commission's order." 15 U.S.C. § 717r(c). The grant of a rehearing likewise does not stay the original order absent FERC's grant of a stay. *See Pa. Pub. Util. Comm'n v. F.E.R.C.*, 881 F.2d 1123, 1125-26 (D.C. Cir. 1989); *see also In re Permian Basin Area Rate Cases*, 390 U.S. 747, 773, 88 S. Ct. 1344, 1363, 20 L. Ed. 2d 312, 340 (1968) (holding that "the issuance of a stay of an administrative order pending disposition by the Commission of a motion to 'modify or set aside, in whole or in part' the order is a matter committed by the Natural Gas Act to the Commission's discretion").

The issues of the effect of a decision by FERC and whether a FERC decision has been stayed are discussed effectively and concisely by another district court as follows:

> The NGA itself directs that an order by FERC not be stayed unless either FERC itself-in the context of a rehearing-or the reviewing Court of Appeals specifically orders a stay. *See* 15 U.S.C. § 717 r(c). [FN5] *See also Ecee, Inc. v. Federal Power Comm'n*, 526 F.2d 1270, 1274 (5th Cir.) (order is final "unless and until it is stayed, modified, or reversed"), *cert. denied*, 429 U.S. 867, 97 S.Ct. 176, 50 L.Ed.2d 147 (1976); *State of Louisiana v. Federal Power Comm'n*, 483 F.2d 972 (5th Cir. 1973) neither application for rehearing, nor the institution of review in the Court of Appeals operates to stay a FERC order "unless such a stay is specifically ordered by the Commission or Court"); *Jupiter Corp. v. Federal Power Comm'n*, 424 F.2d 783, 791 (D.C.Cir. 1969) (orders effective during disposition of review proceedings), *cert. denied*, 397 U.S. 937, 90 S.Ct. 944, 25 L.Ed.2d 118 (1970).

8

FN 5. The statute provides:

The filing of an application for rehearing . . . shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings [before a reviewing Court of Appeals] shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

15 U.S.C. § 717r(c).

Moreover, even if defendants were to proffer sufficient detail to raise questions about the advisability or fairness of FERC's actions related to safety and the potential impairment of others' property rights, this Court would have no authority to amend or qualify the Commission's order. This Court's role is one of mere enforcement. *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990); *Kern River Gas Transmission Co. v. Clark County*, 757 F.Supp. 1110, 1116 (D.Nev. 1990). The District Court's sole charge and authority is to evaluate the scope of the FERC Certificate, and order the condemnation of property in accordance with that scope. *104 Acres of Land*, 749 F.Supp. at 430.

Under the statutory framework, there is no appeal of a FERC decision save to the appropriate Court of Appeals. Disputes as to the propriety of FERC's proceedings, findings, orders, or reasoning, must be brought to FERC by way of request for rehearing. 15 U.S.C. § 717 r (a); *104 Acres of Land*, 749 F.Supp. at 430. Appeals may thereafter be brought before a U.S. Court of Appeals only. 15 U.S.C. § 717 r (b); *Williams*, 890 F.2d at 262 (judicial review *exclusive* in the Courts of Appeals).

Moreover, collateral attack of a FERC certificate in the District Court is impermissible. In *Williams*, the Tenth Circuit held that the district courts' authority under the NGA-to authorize the FERC certificate holder to condemn property-"does not provide challengers with an additional forum to attack the substance and validity of a FERC order." *Id.* at 264; *104 Acres of Land*, 749 F.Supp. at 430 (certificate may not be challenged in eminent domain proceeding; landowner's only recourse is request for rehearing or appeal of FERC order). *See also City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 335-340, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958) (power project license granted by FERC's predecessor may not be collaterally attacked in eminent domain action under analogous Federal Power Act); *Rivers Elec. Co., Inc. v. 4.6 Acres of Land*, 731 F.Supp. 83, 86-87 (N.D.N.Y. 1990) (FERC license to build hydroelectric power plant cannot be challenged in eminent domain proceeding pursuant to same legislation).

The rule against collateral attack is grounded in Congress's having vested in FERC exclusive jurisdiction over the regulation of the transport and sale of natural gas in interstate commerce. *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 767, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968) ("Congress has entrusted the regulation of the natural gas industry to the informed judgment of the Commission, and not to the preferences of reviewing courts. A presumption of validity therefore attaches to each exercise of the Commission's expertise."); *Public Serv. Comm'n of State of N.Y. v. Federal Power Comm'n*, 327 F.2d 893, 896-97 (D.C.Cir. 1964). This Court has simply no power to impose conditions concerning safety or the potential for interference with other's property rights on a pipeline company's exercise of the authority granted it by FERC.

In any event, the Massachusetts statute is preempted by the NGA. As the MBTA acknowledges in its brief, the NGA "occupies the field" with respect to the regulation of natural gas "rates and facilities." *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988); [FN6] *Public Util. Comm'n of the State of Cal. v. Federal Energy Reg. Comm'n*, 900 F.2d 269, 273-74 (D.C.Cir. 1990), *National Fuel Gas Supply Corp. v. Public Serv. Comm'n of the State of N.Y.*, 894 F.2d 571, 575-79 (2d Cir.), *cert. denied*, 497 U.S. 1004, 110 S.Ct. 3240, 111 W.Ed.2d 750 (1990); *Kern River*, 757 F.Supp. at 1114-15.

> FN 6.
>
> In *Schenidewind*, a unanimous Court held that a state statute requiring natural gas companies to obtain approval from a state public service commission before issuing long-term securities was preempted by the NGA. 485 U.S. at 300-311. The Court identified the definitive question as whether the statute was "a regulation of the rates and facilities of natural gas companies used in transportation and sale for resale of natural gas in interstate commerce." *Id.* at 306.

*Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth.*, 2 F. Supp. 2d 106, 109-111 (D. Mass. 1998).

When a property owner comes to federal court to challenge FERC's findings in the certificate of public convenience and necessity, the property owner thereby mounts what in essence is a collateral attack on that certificate. One district court responded to such a collateral attack as follows:

> The court does not have jurisdiction to review a collateral attack on the FERC certificate. *Williams Natural Gas Co. v. City of Okla. City*, 890 F.2d 255, 262 (10th Cir. 1989); *see* also *Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth.*, 2 F.Supp.2d 106, 110 (D.Mass. 1998).
>
> In *Williams Natural Gas Co.*, the Tenth Circuit held that a federal district court's sole function in an eminent domain proceeding under the NGA is to order condemnation in accordance with a FERC certificate. 890 F.2d at 264; *see* also *Tenn. Gas Pipeline Co.*, 2 F.Supp.2d at 110 (citing *Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 749 F.Supp. 427, 430 (D.R.I. 1990)) ("The District Court's sole charge and authority is to evaluate the scope of the FERC Certificate, and order the condemnation of property in accordance with that scope."). The district court lacks jurisdiction to review the validity and/or conditions of a FERC certificate. *Williams Natural Gas Co.*, 890 F.2d at 262. Review of FERC certificates is within the exclusive jurisdiction of federal courts of appeals. *Id.* at 261. "[T]he eminent domain authority granted the district courts under §7 (h) of the NGA, 15 U.S.C. §717 f (h), does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under the statute is not appellate but, rather, to provide for enforcement." *Id.* at 264. Once the holder of a FERC certificate of public convenience and necessity asks a district court to enforce its right to condemn, the findings in the FERC certificate are treated as conclusive.

*Kan. Pipeline Co. v. A 200 Foot By 250 Foot Piece of Land*, 210 F. Supp. 2d 1253, 1255-1256

(D. Kan 2002).

The Supreme Court has also addressed this issue:

> Finally, we cannot agree that the Commission abused its discretion by its refusal to stay, protanto, enforcement of the area rates pending disposition of producers' petitions for special relief. The Court of Appeals would evidently require the Commission automatically to issue such a stay each time a producer seeks relief. This is plainly inconsistent with the established rule that a party is not ordinarily granted a stay of an administrative order without an appropriate showing of irreparable injury. *See, e.g., Virginia Petroleum Jobbers Assn. v. FPC*, 104 U.S. App. D.C. 106, 259 F.2d 921, 925. Moreover, the issuance of a stay of an administrative order pending disposition by the Commission of a motion to 'modify or set aside, in whole or in part' the order is a matter committed by the Natural Gas Act to the Commission's discretion. s 19(a),(c), 15 U.S.C.§§ 717r(a),(c). We have no reason now to believe that it would in all cases prove an abuse of discretion for the Commission to deny a stay of the area rate order. There might be many situations in which a stay would be inappropriate; at a minimum, the Commission is entitled to give careful consideration to the substantiality of the claim for relief, and to the consequences of any delay in the full administration of the area rate structure. We therefore decline to bond the Commission to any inflexible obligation; we shall assume that it will, in situations in which stays prove appropriate, properly exercise its statutory authority.

*In re Permian Basin Area Rate Cases*, 390 U.S. 747, 773-774 (1968).

FERC has not issued a stay in the case *sub judice*. *See* Document No. 6, p. 9. Its order granting Plaintiffs' certificate of public convenience and necessity therefore remains in effect unless FERC decides otherwise or, if FERC ultimately upholds its original decision, until overturned by a United States Court of Appeals with jurisdiction over the matter. 15 U.S.C. § 712r(b),(c).

## The Natural Gas Act, 15 U.S.C. § 717 *et seq.*

The federal government regulates the transport and sale of natural gas "in interstate and foreign commerce." 15 U.S.C. § 717. The construction or extension of facilities for the transport or sale of natural gas requires a certificate of public convenience and necessity issued by FERC. 15 U.S.C § 717f(c). If it is unable to acquire the property rights it needs by contract, the holder of such a certificate may bring a condemnation action in the district court for the district in which the property is located, so long as the owner values the rights at issue in excess of $3,000. 15 U.S.C. § 717 f (h). In *Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement*, 776 F.2d 125, 128-29 (6th Cir. 1985), it was held that these rights include, in addition to the easements necessary for the construction of pipelines and surface infrastructure as specifically stated in 717f(h), "easements for the storage of gas in underground storage pools."

## FERC Procedure

The Fourth Circuit provides a good summary of FERC procedure:

> Before a gas company . . . can build and operate a new pipeline, it must obtain a certificate of public convenience and necessity from the Federal Energy Regulatory Commission (FERC or the Commission). The procedure for obtaining a certificate from FERC is set forth in the [Natural Gas Act] NGA, 15 U.S.C. § 717 *et seq.*, and its implementing regulations, 18 C.F.R. § 157.1 *et seq.* The process begins with an application from the gas company that includes, among other information, (1) a description of the proposed pipeline project, (2) a statement of the facts showing why the project is required, and (3) the estimated beginning and completion date for the project. 15 U.S.C. § 717 f (d); 18 C.F.R. § 157.6 (b). Notice of the application is filed in the Federal Register, 15 U.S.C. § 157.9, public comment and protest is allowed, *id.* § 157.10, and FERC conducts a public hearing on the application, *id* § 157.11. As part of its evaluation, FERC must also investigate the environmental consequences of the proposed project and issue an environmental impact statement. *See* 42 U.S.C. § 4332. At the end of the process FERC issues a certificate if it finds that the proposed project "is or will be required by the present or future public convenience and necessity." 15 U.S.C. § 717 f (e). In its order issuing a certificate, FERC specifies a date for the completion of construction and the start of service. 18 C.F.R. § 157.20 (b). The certificate may include any terms and conditions that FERC deems "required by the public convenience and necessity." *Id.* § 157.20. Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise "the right of eminent domain" over any lands needed for the project. 15 U.S.C. § 717 f (h).

*E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 818 (4th Cir. 2004)..

## Federal Eminent Domain Overview

*Sage* also contains a good overview of federal eminent domain:

The first question is whether the district court can use its equitable power to order immediate possession in a condemnation case. We begin our discussion by reviewing the mechanics of how the federal power of eminent domain is usually exercised. Congressional authorization is required for land to be condemned by the government for public use. *See United States v. N. Am. Transp. Co.*, 253 U.S. 330, 333-34, 40 S.Ct. 518, 64 L.Ed. 935 (1920); 1A J. Sackman, Nichols on Eminent Domain § 3.03[1] (rev.3d ed.). Congress sometimes exercises the power of eminent domain directly by enacting a statute that appropriates specific property. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 5, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984). Congress's normal practice, however, is to delegate the power of eminent domain to government officers who may condemn property in the name of the United States for public use. And Congress may, as it did in the NGA, grant condemnation power to "private corporations . . . execut[ing] works in which the public is interested." *Mississippi & Rum River Boom Co. v. Patterson*, 98 U.S. 403, 406, 25 L.Ed. 206 (1878). Although the federal statutes conferring the power of eminent domain routinely identify the officer who may exercise the power and the purpose for which it may be exercised, the statutes typically do not prescribe the procedural methods or steps for exercising the power. *See, e.g.*, 10 U.S.C. §2663 (a) ("Secretary of a military department may . . . acquire by condemnation any interest in land . . . needed for the site, construction, or operation of fortifications, coast defenses, or military training camps"); 16 U.S.C. § 404 c - 11 ("The Secretary of the Interior is authorized in his discretion to acquire for inclusion within the Mammoth Cave National Park by . . . condemnation . . . any lands . . . within the maximum boundaries as authorized by . . . this title."); *see also Kirby*, 467 U.S. 1, 3 n. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984). When a condemnation action becomes necessary, a government official has two statutory methods available for exercising the power of eminent domain. Under the first method, called "straight condemnation," the action usually proceeds to a determination of just compensation and final judgment before the condemnor takes possession. *See* 40 U.S.C. § 3113 (formerly codified at 40 U.S.C. § 257); *Kirby*, 467 U.S. at 3-4, 104 S.Ct. 2187. Under the second method, often referred to as "quick-take" the government may take possession of the condemned property at the beginning of the case. *See e.g.*, 40 U.S.C. § 3114 (formerly codified at 40 U.S.C. § 258 a).

In straight condemnation the government official requests the Attorney General to initiate the condemnation action in district court, 40 U.S.C. § 3113. A special rule, Fed.R.Civ.P. 71A, governs the procedure in a condemnation action. *See Kirby* 467 U.S. at 3-4, 104 S.Ct. 2187. Under Rule 71A the complaint must set forth the authority for the taking, the use for which the property is being taken, the identity of the property, and the interest to be acquired. Fed.R.Civ.P. 71A (c)(2). After the complaint is filed, the action proceeds in due course to the determination of just compensation for the owner of the land. *Id.* § 71 A (h). Rule 71 A does not contain procedures for dealing with issues of prejudgment possession by the condemning authority. Under traditional procedures, however, the condemning authority takes possession of the property after the determination and payment of just compensation. *See Kirby*, 467 U.S. at 4, 104 S.Ct. 2187; 6 Nichols, *supra*, § 24.10 [1]. As the Supreme Court indicated in *Kirby*, when just compensation is determined first, "[t]he practical effect . . . is to give the government an option to buy the property at the adjudicated price. If the government wishes to exercise that option, it tenders payment to the private owner, whereupon title and right to possession vest in the United States." *Kirby*, 467 U.S. at 4, 104 S.Ct. 2187 (citation omitted). On the other hand, "[i]f the government decides not to exercise its option, it can move for dismissal of the condemnation action." *Id. See also* Fed.R.Civ.P. 71 (A) (I) (3).

The second method of taking, prescribed mainly in the Declaration of Taking Act (DTA), provides the government with a more expeditious procedure. 40 U.S.C. § 3114. The DTA's quick-take provisions authorize the government to take immediate possession of condemned property. FN* When the government proceeds under the DTA, it files a "declaration of taking" that, among other things, states the authority for the taking, states the public use for which the land is taken, and provides an estimate of just compensation. Once the government deposits the estimate amount with the court, "to the use of the persons entitled to the compensation," title to the condemned property automatically vests in the United States. *Id.* § 3114 (a), (b); *Kirby*, 467 U.S. at 4-5, 104 S.Ct. 2187. While the DTA gives the government the right of immediate possession, the time and terms of possession are fixed by the district court. 40 U.S.C. § 3114 (d) (1). The precise compensation figure is determined later. [The natural gas company] . . . did not try to use DTA's quick-take provisions, presumably because the statute only applies to condemnation proceedings "brought by and in the name of the United States." *Id.* § 3114 (a).

FN* The DTA gives any government official with condemnation authority the right to take immediate possession. A few statutes give this right to specific officials. *See, e.g.*, 42 U.S.C § 5196 (I) (1) (Director of the Federal Emergency Management Agency may "procure by condemnation or otherwise . . . materials and facilities for emergency preparedness, with the right to take immediate possession thereof"); 33 U.S.C. § 594 (when Secretary of Army is authorized to take lands necessary for harbor improvements, he "shall have the right to take immediate possession"); *see also* 10 U.S.C. § 2663 (b) ("In time of war or when war is imminent, the United States may, immediately upon the filing of a petition for condemnation . . . take and use the land to the extent of the interest sought to be acquired."). These scattered statutes appear to be superfluous to the extent they confer the right of immediate possession, unless they allow an even more expeditious process than the DTA. That is not an issue for today, however.

The Natural Gas Act, like most statutes giving condemnation authority to government officials or private concerns, contains no provision for quick-take or immediate possession. The Act simply says that any holder of a certificate of public convenience and necessity may acquire property "by the exercise of eminent domain in the district court." 15 U.S.C. § 717 f (h). The Act further provides that "the practice and procedure in any action or proceeding for that purpose . . . shall conform . . . with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." *Id.* Courts, including the district court here, agree that this state procedure requirement has been superseded by Rule 71 A. *See N. Border Pipeline Co. v. 64.111 Acres of Land*, 344 F.3d 693 (7th Cir. 2003); *S. Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1374 (11th Cir. 1999); *see also Kirby*, 467 U.S. at 4 n. 2, 104 S.Ct. 2187. As we have said, Rule 71 A does not provide procedures for allowing early possession. The Advisory Committee that drafted Rule 71 A was well aware of the statutes (the DTA was the main one) giving the government the right of immediate possession. The committee considered, but decided against, including procedures in Rule 71 A for exercising this right. According to the committee, "the procedure . . . being followed [to allow immediate possession] seems to be giving no trouble, and to draft a rule to fit all the statutes on the subject might create confusion." Fed.R.Civ.P. 71 A advisory committee's supplementary report, 11 F.R.D. 222, 228 (Mar. 1951). Rule 71 A thus contains no language that prohibits a condemnor from pursuing any available procedures to obtain possession prior to the entry of final judgment. These procedures could include an application for a preliminary injunction under Rule 65 (a) because the regular rules of civil procedure apply when Rule 71 A is silent. *See* Fed.R.Civ.P. 71 A (a).

17

In any event, if the proceedings in the eighty-five separate cases here had taken their normal course under Rule 71 A, . . . [the natural gas company] would not have been able to enter each tract until just compensation was determined and paid on that tract. [The natural gas company] . . . asserted that determining just compensation first would cause great delay in construction and in placing the pipeline in operation. In order to avoid this delay, [the natural gas company] . . . filed its motions for immediate possession, contending that it met the standards for a preliminary injunction. The statute (the NGA) that gives it the power to condemn is silent on the issue of immediate possession, and the company did not seek to assert quick-take authority under the DTA. Thus, the specific question raised before the district court, and now presented on appeal, is whether a court may use its equitable powers to grant a preliminary injunction allowing immediate possession when there is no provision for that relief in the NGA or Rule 71 A.

*Sage,* 361 F.3d at 820-823.

## Availability of Equitable Relief - General

As stated earlier in this Opinion, the leading case with regard to the availability of

equitable relief in the form of a preliminary injunction for immediate possession under the

authority of the NGA pursuant to a FERC certificate of public convenience and necessity is *East*

*Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004).

The reasoning and conclusions of the Fourth Circuit are persuasive and are adopted by this

Court. The Fourth Circuit set forth its analysis and determination on this issue as follows:

> A federal court has the power to grant equitable relief, *see Gordon v.*
> *Washington*, 295 U.S. 30, 36, 55 S.Ct. 584, 79 L.Ed. 1282 (1935), but this power is
> circumscribed by the venerable principle that "equity follows the law," *Hedges v.*
> *Dixon County*, 150 U.S. 182, 192, 14 S.Ct. 71, 37 L.Ed. 1044 (1893). Equity, in other
> words, may not be used to create new substantive rights. *See, e.g., Norwest Bank of*
> *Worthington v. Ahlers*, 485 U.S. 197, 206-07, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).
> However, when a substantive right exists, an equitable remedy may be fashioned to
> give effect to that right if the prescribed legal remedies are inadequate. *See Berdie v.*
> *Kurtz*, 88 F.2d 158, 159 (9th Cir. 1937); *Am. Brake Shoe & Foundry Co. v. N.Y. Rys.*
> *Co.*, 293 F. 633, 637-38 (2d. Cir. 1923). The district court followed these principles
> when it granted [the natural gas company] . . . equitable relief in the form of a
> preliminary injunction that allowed the company to take early possession of the
> condemned property.

The district court discharged its duty to adjudicate these cases by first taking upon the question of whether [the natural gas company] . . . had a substantive right to condemn the landowners' property. After considering the briefs of the parties and hearing oral argument, the court issued orders determining that "[the natural gas company] . . . has established its right to exercise eminent domain over the [landowners'] property as outlined in the [c]ertificate [of public convenience and necessity issued by FERC]." J.A. 74. These orders gave [the natural gas company] . . . an interest in the landowners' property that could be protected in equity if the conditions for granting equitable (in this case, injunctive) relief were satisfied. *See Seymour v. Freer*, 8 Wall. 202, 75 U.S. 202, 213-14, 19 L.Ed. 306 (1868) (when a party has an interest in property "distinct from legal ownership," that interest "constitute[s] an equity which a court of equity will protect and enforce"). Therefore, once [the natural gas company] . . . right to take the easements was determined, it was proper for the district court to consider [the natural gas company] . . . motions for equitable relief in the various cases, specifically, its requests for preliminary injunctions granting immediate possession. . . . [The] district court carefully considered the requirements for granting a preliminary injunction. A preliminary injunction is, of course, "appropriate to grant intermediate relief of the same character as that which may be granted finally." *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). *See also In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). The district court's holding that [the natural gas company] . . . had established its right to condemn meant that it would have been entitled to possession upon the entry of final judgment. Because the court found that the requirements for a preliminary injunction had been met, the cour t granted immediate possession to [the natural gas company] . . . as a form of intermediate relief. Again, the district court followed established principles and procedures in granting equitable relief. The landowners argue that general principles of equity are inapplicable here because equitable relief in the form of immediate possession is barred in a condemnation case. We disagree.

To begin with, the Constitution does not prevent a condemnor from taking possession of property before just compensation is determined and paid. As the Supreme Court said a long time ago, the Constitution "does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed." *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659, 10 S.Ct. 965, 34 L.Ed. 295 (1890). Rule 71 A provides the procedure for determining just compensation, and [the natural gas company] . . . has deposited case with the court in an amount equal to the appraised value of the interests condemned. If the deposit is somehow short, [the natural gas company] . . . will be able to make up the difference. In 2002 [the natural gas company] . . . parent company reported earnings of $1.17 billion from its natural gas transmission division that includes [the natural gas company] . . . . There is thus adequate assurance that the landowners will receive their just compensation. *See Wash. Metro. Area Transit Auth. v. One Parcel of Land*, 706 F.2d 1312, 1321 (4th Cir. 1983) (fact that agency could be sued and had substantial assets was sufficient to assure just compensation).

The subtext of the landowners' argument that only congress can grant the right of immediate possession is this: the preliminary injunction process does not provide the landowner with procedural safe-guards that are comparable to those provided by Congress in the DTA. We disagree. Although the procedural safeguards in the preliminary injunction process are not a perfect match with those in the DTA, a comparison shows that the landowner is adequately protected when the condemnor obtains immediate possession under either procedure. In a DTA case the government exercises its right to immediate possession with minimal judicial oversight. Title and the right to possession vest in the government immediately upon the filing of a declaration and the requisite deposit. *See* 40 U.S.C. § 3114; *Kirby*, 467 U.S. at 4-5, 104 S.Ct. 2187. Although the district court fixes the time and any terms of the possession, the government takes possession of the condemned property as a matter of course, unless the landowner or occupant demonstrates some undue hardship that warrants a delay. *See e.g., United States v. Certain Land in the Borough of Manhattan*, 332 F.2d 697, 680-82 (2d Cir. 1964) (possession delayed when government sought to oust tenants on five days' notice); *United States v. 6,576.27 Acres of Land*, 77 F.Supp. 244, 246 (D.N.D. 1948) (eviction delayed when "it would be difficult, if not impossible, for . . . farm families to move by the date fixed in the order"). In a condemnation case under the NA, a gas company that seeks immediate possession has a much stiffer burden than the government does under the DTA. Because title in an NGA case does not pass until compensation is determined and paid. *See Danforth v. United States*, 308 U.S. 271, 284–85, 60 S.Ct. 231, 84 L.Ed 240 (1939), the company's motion for immediate possession triggers a threshold requirement. The district court must determine that the company has the right to condemn the property in question. *See Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976 (N.D.Il1. 2002). Once the right to condemn is established by court order, it follows that the company will be entitled to possession when title is transferred at the end of the case.

The question then becomes whether the relief that will be appropriate at the end (that is, possession) should be granted at an earlier stage. To obtain this intermediate relief, the gas company must satisfy the strict requirements for a preliminary injunction. For example, the company must demonstrate that it will suffer irreparable harm without immediate possession, and the company's harm must be weighed against any harm to the landowner. *See Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001).

. . .

In comparing the protections of the DTA to those in injunction proceedings, we return briefly to the matter of title and the payment of just compensation. Again, title passes immediately to the government under the DTA. There is the possibility, of course, that the government, in making its deposit to cover compensation, will underestimate the value of the land. In that case, the landowner is protected because the government undertakes to pay the difference between the adjudicated value of the land and the deposit. *Kirby*, 467 U.S. at 5, 104 S.Ct. 2187. In an NGA condemnation where early possession is granted to a gas company, the landowner is protected in a different way, that is, by "the rule that title does not pass until just compensation has been ascertained and paid." *Danforth*, 308 U.S. at 284-85, 60 S.Ct. 231. Therefore, if the gas company's deposit (or bond) is less than the final compensation awarded, and the company fails to pay the difference within a reasonable time, "it will become a trespasser, and liable to be proceeded against as such." *Cherokee Nation*, 1 35 U.S. at 660, 10 S.Ct. 965. Likewise, if a FERC-regulated gas company was somehow permitted to abandon a pipeline project (and possession) in the midst of a condemnation proceeding, the company would be liable to the landowner for the time it occupied the land and for any "damages resulting to the [land] and to fixtures and improvements, or for the cost of restoration." 4 J Sackman, Nichols on Eminent Domain § 12 E.01 [07] (rev.3d ed). *See also* Fed.R.Civ.P. 71 A (I) (3) (district court "shall not dismiss [condemnation] action as to any part of the property of which the plaintiff has taken possession or in which the plaintiff has taken title or a lesser interest, but shall award just compensation for the possession, title or lesser interest taken"). For all of the reasons, we conclude that when a gas company initiating a condemnation action under the NGA seeks immediate possession by preliminary injunction, there are sufficient safeguards in place to protect the landowner.

. . .

22

Finally, the landowners' argument that equity cannot be invoked here ignores the fact that there is substantially public interest-the need for natural gas supply-at stake in this case. As the Supreme Court has said, courts of equity may go to greater lengths to give "relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Va. Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937). *See also United States v. Morgan*, 307 U.S. 183, 194, 59 S.Ct. 795, 83 L.Ed. 1211 (1939); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 497 (4th Cir. 1999). FERC . . . concluded that the project was required by the public convenience and necessity. It was therefore appropriate for the district court to weigh the public benefit of expeditious project construction in deciding that it could use its equitable power in this case.

*Sage,* 361 F.3d at 823-827.

In distinguishing its decision from the decision of the Seventh Circuit in *Northern Border*

*Pipeline Co.*, the Court in *Sage* stated:

One circuit case, *Northern Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469 (7th Cir. 1998), has held that a district court lacked authority to grant a condemnor immediate possession under the NGA. But that case involved an entirely different set of circumstances than those presented here. Specifically, the gas company in *Northern Border* did not obtain an order determining that it had the right to condemn before it sought a preliminary injunction. Its motion for an injunction was based entirely on the existence of a certificate of public convenience and necessity. Under those circumstances, the Seventh Circuit held that the gas company had no right to equitable relief because the company "did not present an argument grounded in substantive law establishing a preexisting entitlement to the property." *Id.* at 472. Two district court decisions in the Seventh Circuit have interpreted *Northern Border* to mean that immediate possession is improper only when there has been no order confirming the right to condemn. *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F.Supp.2d 299, 301 (N.D.Il1. 2000) ("in this case, plaintiff does have a preexisting entitlement to the easements, the judgments of condemnation, which make an award of possession appropriate:); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D.Il1. 2002) (same). We agree with the assessment of the two district courts. The gas company in *Northern Border* had simply failed to seek an order determining that it had the right to condemn. Without having that right in substantive law determined, the company could not invoke equity.

*Sage*, 361 F.3d at 827-828.

Under the approach set forth in *Sage*, which has been adopted by this Court as proper, the initial issue to be examined is whether Steckman has a substantive right to condemn the subject properties. The Court finds that Steckman has clearly established its right to exercise eminent domain under the Natural Gas Act over all of the subject properties of Defendants in accordance with the FERC certificate of public convenience and necessity. This finding is based upon the Court's review of the Natural Gas Act and the FERC certificate issued in this case.

The Natural Gas Act provides:

### Right of eminent domain for construction of pipelines, etc.

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situation: Provided, that the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. § 717f(h).

The language in Section 717 f(h) concerning "practice and procedure" conforming to state court procedure has been superceded by Federal Rule of Civil Procedure 71.1 (formerly Rule 71 A). *See Sage,* 361 F.3d at 822.

24

Accordingly, in order for Steckman to establish a right to condemn, the following elements must be proved:

1.  Steckman has been issued a certificate of public convenience and necessity;

2.  Steckman has been unable to acquire the needed land by contract with the Defendants;[3] and

---

[3]With regard to whether this element requires that good faith negotiations be established, that issue is discussed by a district court as follows:

> The court, in its own research, found that some federal district courts have imposed a good faith negotiation requirement. See, e.g., *USG Pipeline Co.*, 1 F.Supp.2d at 822 (citations omitted) ("Courts have imposed a requirement that the holder of the FERC Certificate negotiate in good faith with the owners to acquire the property."); *Transcon, Gas Pipe Line Corp.*, 745 F.Supp. at 369 ("In addition to satisfying the rquirements of §717 f (h), federal law requires the conemnor to have conducted good faith negotiations with the landowners in order to acquire the property. . . ."); see also *Kern River Gas Transmission Co. v. Clark County, Nev.*, 757 F.Supp. 1110, 1113-14 (D.Nev. 1990). These courts gave no explanation why they adopted such a requirement. None of them refused to authorize condemnation because a holder of a FERC certificate failed to negotiate in good faith before seeking condemnation.

> The plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of eminent domain:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C.§717 f (h).

25

3.    The value of the subject property claimed by the owner exceeds $3,000.00.

*See* 15 U.S.C.§717 f (h).

Steckman meets the first element in that FERC issued a certificate of public convenience

and necessity to Plaintiffs on June 5, 2008. *See* Prelim. Inj. H'rg., Aug. 25, 2008, Exhibit 1. The

scope of the FERC certificate includes the subject real estate of the Defendants. Exhibit 1, *supra.*

*See Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth.*, 2 F. Supp.2d 106, 110 (D. Mass. 1998)

and *Guardian Pipeline, L.L.C. v. 529. 42 Acres of Land*, 210 F. Supp. 2d 971, 974 (N.D. Ill.

2002).

The Court also finds that the second and third elements have been established. The

Plaintiffs have attempted to obtain the property interests requested in the preliminary injunction

motion by negotiation with Defendants, but have been unsuccessful. Prelim. Inj. H'rg Tr., August

25, 2008, p. 101-102 (*hereinafter* H'rg Tr.). Each of the Defendants claim that their property

interest is worth more than $3,000.00. H'rg Tr., pp. 96-97, 153.

Therefore, all of the required elements are established. Accordingly, the Court finds that

Steckman has clearly established its right to exercise eminent domain over all of the subject

properties of Defendants under the authority of the Natural Gas Act pursuant to the FERC

certificate of public convenience and necessity.

---

The statute only requires that the party seeking to condemn be unable to
acquire the property by contract or unable to agree on compensation to be paid for the
property. The court declines to demand more than the statute requires by its terms.

*Kansas Pipeline Company v. A 200 Foot By 250 Foot Piece of Land*, 210
F.Supp.2d 1253, 1257 (D.Kansas 2002).

This Court concurs with the Kansas District Court's analysis and conclusion and does
not require more than the Natural Gas Act expressly requires.

This finding by the Court that Steckman has established a right to condemn gives to Steckman an equitable interest in the subject properties which under appropriate circumstances may be protected and enforced by this Court through its equitable powers, including granting immediate possession or entry by preliminary injunction. *See E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004), rehearing denied, 369 F.3d 357 (2004), cert. denied, 543 U.S. 978 (2004).

We will now address the merits of the request for immediate possession by examining the factors which are required in order to justify the issuance of a preliminary injunction.

## Equitable Relief in the Form of Preliminary Injunction in This Case

Having determined that Steckman has clearly established its right to exercise eminent domain over all of the subject properties under the authority of the Natural Gas Act in accordance with the FERC certificate of public convenience and necessity, Steckman may properly seek equitable relief from this Court pursuant to that substantive right to condemn.

Federal Rule of Civil Procedure 65(a)(1) permits a district court to "issue a preliminary injunction only on notice to the adverse party." Notice is clearly established in this case by reason of the Plaintiffs and Defendants participating in the August 25, 2008 preliminary injunction hearing, where evidence was taken, the record was closed and the parties were provided the opportunity to file written legal argument as well as present oral legal argument.

"The test for preliminary relief is a familiar one. A party seeking a preliminary injunction must show that (1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) the public interest favors such relief." *Rogers v. Corbett*, 468 F. 3d

27

188, 192 (3d Cir. 2006) (citations omitted). Courts "should endeavor to balance [] these four .
. . factors to determine if an injunction should issue." *Allegheny Energy, Inc. v. DQE, Inc.*, 171
F3d 153, 158 (3d Cir. 1999) (citation omitted).

The Court makes the following findings of fact based upon the testimony presented at the
August 25, 2008 preliminary injunction hearing. These facts are material to the issue of whether
equitable relief in the form of a preliminary injunction granting immediate possession is
appropriate in this case.

The significant level of activity in the natural gas industry and the limited number of
contractors available to conduct pipeline related construction resulted in the Plaintiffs being
required to secure these contractors in March 2008 even though the FERC certificate had not yet
been issued. H'rg Tr., p. 33. If Plaintiffs had waited until the FERC certificate issuance date the
contractors may not have been available. H'rg Tr., pp. 35-36.

The project being constructed by Plaintiffs in Bedford County is described in paragraphs
7 and 8 of the FERC certificate.    H'rg Tr., pp. 38-39. The facilities authorized in the FERC
certificate are to be completed and available for service by April 1, 2009. H'rg Tr., p. 39.

The natural gas to be stored pursuant to this project will be available for use in heating
residences, providing power for commercial businesses, manufacturing, and electric power
generation. H'rg Tr., pp. 40-41. In April 2009, natural gas will be taken from transportation
pipelines and injected into the underground storage field in Bedford County for use during the
heating season (November 2009-March 2010) when it will be extracted and placed back into the
transportation pipeline. H'rg Tr., pp. 40-41. The injection process will take months to complete
after it is begun in April 2009. H'rg Tr., p. 41. The construction on the five subject properties

28

is part of phase one of the project and must be timely completed in order for the April 1, 2009 deadline to be met. H'rg Tr., p. 42. The immediate entry and possession requested in the preliminary injunction motion is "directly related to the in service date of April 1, 2009. H'rg Tr., p. 42. The requested relief is "consistent with the authorized facilities and locations that FERC specified in the environmental assessment." H'rg Tr., p. 44.

Each of the five landowners involved in the preliminary injunction motion claim that their property interest is worth at least $3,000.00. *See* H'rg Tr., pp. 96-97. Of the 157 property interests involved in this project all except 10 have been settled. H'rg Tr., p. 98.

Plaintiffs have attempted to obtain the property interests requested by the preliminary injunction motion by negotiation but have been unsuccessful. H'rg Tr., p. 101-102. The Plaintiffs and the owners of the five subject properties have exchanged offers. H'rg Tr., p. 102. Plaintiffs remain willing to continue to negotiate. H'rg Tr., p. 102. After the pipeline is installed on the subject properties the pipeline is required to be subjected to hydrostatic testing which verifies whether the pipeline can withstand pressure greater than it will experience during operation. H'rg Tr., p. 119. Performing this test at a time of freezing temperatures can "skew the test results." H'rg Tr., p. 119.

Delay of immediate entry and access will result in delay of project completion due to loss of construction days prior to the arrival of cold weather. Without access to the subject properties the project will have to be halted. Lack of immediate possession will also cause the contractor to run out of work to perform. H'rg Tr., pp. 126-130.

29

**Likelihood of Success on Merits**

The Court has already determined that Steckman has established its right to exercise eminent domain under the Natural Gas Act over all of the subject properties of Defendants in accordance with the FERC certificate of public convenience and necessity. This finding establishes compliance with this first factor and therefore supports granting immediate possession.

**Irreparable Harm to Steckman**

An essential condition for a preliminary injunction is a showing of "irreparable injury" if the injunction is not granted since "the purpose of such an injunction is to protect the moving party from irreparable injury until the court can render a meaningful decision on the merits." *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (citing 11A Wright & Miller § 2947 (2d ed. 1995)).

The FERC certificate reports tha t "Steckman Ridge state[d] that it propose[d] to commence initial injections of third-party gas by April 1, 2009, the start of the injection season, thereby providing potential customers with the flexibility of a full injection season." Document No. 1-4 (3:08-cv-154), ¶ 10. FERC has required that "the facilities authorized in [the certificate] shall be constructed and made available by April 1, 2009 in accordance with [18 C.F.R.] Section 157.20(b).[4] . . ." *Id.* ¶ 35. Steckman asserts that it will suffer irreparable harm if this Court does

---

[4]This regulation requires that the actions authorized by the certificate "be completed and made available for service . . . within the stated time period, and that the applicant must "notify the Commission in writing no later than 10 days after expiration of this time period that the end-user shipper is unable to meet the imposed timetable to commence service." 18 C.F.R. § 157.20(b).

not grant immediate possession of the property but acknowledges there is no express provision in the NGA authorizing prejudgment possession.

The natural gas to be stored pursuant to this project will be available for use in heating residences, providing power for commercial businesses, manufacturing, and electric power generation. H'rg Tr., pp. 40-41. In April 2009, natural gas will be taken from transportation pipelines and injected into the underground storage field in Bedford County for later use during the heating season (November 2009-March 2010) when it will be extracted and placed back into the transportation pipeline. H'rg Tr., pp. 40-41. The injection process will take months to complete after it is begun in April 2009. H'rg Tr., p. 41. The construction on the five subject properties is part of phase one of the project and must be timely completed in order for the April 1, 2009 FERC certificate deadline to be met. H'rg Tr., p. 42. The immediate entry and possession requested in the preliminary injunction motion is "directly related to the in service date of April 1, 2009." H'rg Tr., p. 42. The requested relief is "consistent with the authorized facilities and locations that FERC specified in the environmental assessment." H'rg Tr., p. 44.

Once the pipeline is installed on the subject properties the pipeline is required to be subjected to hydrostatic testing which verifies whether the pipeline can withstand pressure greater than it will experience during operation. H'rg Tr., p. 119. Performing this test at a time of freezing temperatures can "skew the test results." H'rg Tr., p. 119.

Delay of immediate entry and access will result in delay of project completion due to loss of construction days prior to the arrival of cold weather. Without access to the subject properties the project will have to be halted. Lack of immediate possession will also cause the contractor to run out of work to perform. H'rg Tr., pp. 126-130.

31

Without a preliminary injunction granting immediate possession, Steckman will suffer undue delay which will likely result in the natural gas storage facility not being available for service by April 1, 2009. This would result in Steckman being in non-compliance with the FERC certificate which requires that the "facilities authorized in . . . [the FERC] order shall be constructed and made available for service by April 1, 2009. . . ." *See* FERC certificate, Document No. 1, Exhibit D, p. 33. This will cause significant harm both to Steckman and Steckman's customers. If Steckman has to wait for access to these five properties until compensation is determined and paid pursuant to a final judicial determination, the natural gas storage facility will not be completed in sufficient time to be operational for the 2009-2010 heating season. If the preliminary injunction is not granted, Steckman will have to "build up" to a certain parcel, and then move around it to continue construction, which will cause waste and inefficiency.

All of these findings and factors support a conclusion that Steckman will suffer irreparable harm in the absence of a preliminary injunction granting immediate possession. Accordingly, the Court finds that Steckman, its customers and the general public will be irreparably harmed if Steckman is not granted immediate possession of the subject property of the Defendants to perform the construction set forth in the FERC certificate of public convenience and necessity. Therefore, this factor supports granting immediate possession.

## Harm to Defendants

In addition to evaluating the harm to Plaintiffs which will result if the preliminary injunction is not granted we must also assess the harm to Defendants if the preliminary injunction is granted. Those two harms must then be compared in order to determine if the harm to Defendants outweighs the harm to Plaintiffs.

In an eminent domain proceeding under the Natural Gas Act the harm sustained by a condemnee as a result of an order of immediate possession has been described as "slight at best." *See Sage,* 361 F.3d at 829. This is due to the condemnee's right to be paid from money deposited with the Court for that protection. The Court is aware of the nature of the construction to be performed on Defendants' real estate during the installation of the underground pipeline and injection/extraction wells, because these construction activities were described at the hearing. *See* H'rg Tr., pp. 41-42, 102, 115, 126. The Court finds that any harm to the Defendants in this case which will be caused by the immediate possession of their land for construction actions as provided for in the FERC certificate will be minimal and can readily be compensated for from the bond amount which Steckman will be required to pay into the Court.

Therefore, this factor supports granting immediate possession.

33

**Public Interest**

FERC has determined that the Bedford County natural gas storage project of Steckman is in the public interest by the issuance of the certificate of public convenience and necessity. The Court finds that the timely completion of the natural gas storage facility in Bedford County is in the public interest based upon the rationale of the FERC certificate. The Court finds that timely completion of the natural gas storage facility will assist to a reasonably significant degree in ensuring an adequate supply of natural gas for the public during the 2009-2010 heating season (November 2009-March 2010). Failure to complete this project could have an adverse effect on the supply of natural gas for the public or could adversely impact natural gas prices. *See Fla. Power and Light Co. v. FERC*, 598 F.2d 370, 379 (5th Cir. 1979). ( "It is well established . . . that the overall purpose of the Natural Gas Act is to protect the interest of customers in an adequate supply of gas at reasonable rates"). Granting the request for immediate possession will help to assure timely completion of the project which is in the public interest.

FERC specifically found with regard to Steckman's natural gas storage project:

22. "the proposed project will be located in a competitive market and will serve demand in a region that is experiencing rapid growth in natural gas usage. The proposal will also enhance storage options available to pipelines and their customers and, thus, will increase competitive alternatives."

. . .

24. The Commission concludes that the Steckman Ridge Project will enhance the development of an efficient interstate pipeline transportation system by providing customers access to additional high-deliverability storage capacity. Based on the benefits the Steckman Ridge Project will provide to the market and the lack of any identified adverse effects on existing customers, other pipelines, landowners, or communities, we find, consistent with the Policy Statement and section 7 of the NGA, that the public convenience and necessity requires approval of Steckman Ridge's storage project. . . .

. . .

34

101.    For the reasons discussed above, the Commission finds that . . . Steckman
        Ridge's project is required by the public convenience and necessity and that a
        certificate authorizing the construction and operation of the facilities described
        in this order and in the application should be issued, subject to the conditions
        discussed herein. . . .

Federal Energy Regulatory Commission (FERC) Certification, June 5, 2008, Document No. 1,

Exhibit D, pages 7, 8, 33.

These findings by FERC further establish that the public interest will be served by

granting immediate possession so that the natural gas storage project can be timely completed.

This factor favors Steckman and granting the request for immediate possession.

## Conclusion that Preliminary Injunction Shall be Granted

Therefore, the Court finds that all four of the factors to be considered in addressing the

issue of whether a preliminary injunction will be issued favor Steckman and the granting of the

preliminary injunction.    Accordingly, the Court will grant the motion of Plaintiffs for a

preliminary injunction granting Steckman immediate possession of Defendants' property in

accordance with the FERC certificate of public convenience and necessity.

## Defendants' Motions for Preliminary Injunction

In light of the Court's decision concerning the Plaintiffs' motion for preliminary objection,

the Court finds both of the motions for preliminary injunction filed by the Defendants in Civil

Action No. 08-177 and Civil Action No. 08-179 to be moot and accordingly each of those

motions will be denied.

**AND NOW**, this _____19th_____ day of _September_, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby determined and **ORDERED** that the Plaintiffs have the substantive right to condemn the real estate of the Defendants in all of the above-captioned cases under Federal Rule of Civil Procedure 65 pursuant to the Natural Gas Act (NGA), 15 U.S.C. §717, *et seq.* and the certificate of public convenience and necessity issued by the Federal Energy Regulatory Commission (FERC), 123 FERC ¶ 61,248, Docket CP08-15-000, dated June 5, 2008.

In accordance with the foregoing Memorandum Opinion a separate order in each case will be issued on this date with regard to Plaintiffs' Preliminary Injunction Motion requesting right of immediate possession and entry onto the Defendants' real estate.

In accordance with the foregoing Memorandum Opinion, a separate Order will also be issued in Civil Action No. 08-177 and Civil Action No. 08-179 with regard to the Emergency Motion for Preliminary Injunction filed by the Defendants in those cases.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

36